IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| NINOSKA G. PINZON | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:20-cv-00091 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| SENTARA RMH MEDICAL CENTER | ) | United States District Judge |
| and SENTARA HEALTHCARE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

In this employment-discrimination suit, defendants Sentara RMH Medical Center and Sentara Healthcare (collectively, "Sentara") filed a motion to dismiss any claims relating to plaintiff Ninoska G. Pinzon's termination, arguing that any such claim is time-barred. Pinzon did not oppose the motion to dismiss. But when the parties could not agree on the appropriate scope of dismissal, it spurred additional briefing wherein Pinzon argued that granting the motion would not affect the scope of her lawsuit—or her claim for damages. A hearing on this motion was held on July 12, 2021. (Dkt. No. 26.)[1] For the reasons stated below, the motion to dismiss will be denied.

I. BACKGROUND

On June 12, 2017, Sentara employed Pinzon as a cook. During her employment, Pinzon allegedly complained on "multiple occasions" to the "Chef Manager, Director, and Human Resources of being harassed and discriminated against on account of and related to her race or

---

[1] Following the hearing, the case was transferred to the undersigned by the Honorable Thomas T. Cullen. (Dkt. No. 27.)

nationality, which was Hispanic and Cuban." (Compl. ¶ 8, Dkt. No. 1.)[2] Pinzon allegedly endured: (1) her coworkers making fun of her and calling her names; (2) being paid less than white co-workers; (3) being reprimanded or disciplined when coworkers failed to perform their jobs, or for failing to perform a task when she had been told it no longer needed to be completed; and (4) being disciplined when she reported unsanitary practices by the sous chef, among other things. (*Id.*) Pinzon worked for Sentara for approximately 17 months. On November 2, 2018, Sentara allegedly terminated Pinzon's employment "in retaliation for reporting and complaining of discrimination." (*Id.* ¶ 9.)

Pinzon filed two charges of discrimination with the EEOC. Pinzon filed her first charge of discrimination ("Charge 1") on April 2, 2018, which states:

> I. . . . . Since July 12, 2017, I have complained on at least seven occasions of discrimination to the Chef Manager, Director, and Human Resources. Nothing has been done about my complaints. I have complained that White coworkers do not complete their tasks and I am blamed for it, I have complained that a White coworker harasses me and makes fun of the way I speak and my accent. Since my complaints, I have been disciplined for offenses that were not committed by me. I have also asked for a raise and was told by the Director I would not receive a raise.
>
> II. No reason has been given to me for the discrimination. The reason given to me for not receiving a raise by the Director was that Human Resources stated I did not have enough experience. However, I spoke to Human Resources and they were not aware I requested a raise.
>
> III. I believe I am being harassed, subjected to different terms and conditions of employment, and denied wages because of my National Origin (Panamanian), and disciplined in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

---

[2] As noted below, Pinzon's first discrimination charge states that her national origin in Panamanian. This discrepancy is not at issue in this motion to dismiss, so the court does not address it.

(Dkt. No. 6-2.) Pinzon checked the "Retaliation" and "National Origin" boxes on Charge 1. (*Id.*) After her termination, on September 3, 2019, Pinzon filed a second charge of discrimination ("Charge 2"), which states:

> PERSONAL HARM: On April 2, 2018, I filed a charge of discrimination. Since then I [have been] constantly disciplined. I was given instructions but then management would change those instructions and then I would be disciplined for not doing the original instruction. I was demoralized and embarrassed by being made to stand "court" with my errors and [had] discipline announced in front of my co-workers. My co-workers would then yell "fire Nina" during these court sessions. On November 2, 2018, I was informed that my contract would not be renewed and [I was] terminated.
>
> RESPONDENT'S REASON: None given
>
> DISCRIMINATION STATEMENT: I believe that I have been harassed and terminated in retaliation for filing [Charge 1], in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Dkt. No. 6-3.) Pinzon filed this charge of discrimination 305 days after her termination on November 2, 2018.[3] On the same day, the EEOC issued a "Dismissal and Notice of Rights," informing Pinzon that her "charge was not timely filed with EEOC; in other words, [she] waited too long after the date(s) of the alleged discrimination to file [her] charge[.]" (Dkt. No. 6-1.)

Pinzon then filed this lawsuit in November 2020 under Title VII of the Civil Rights Act of 1964, based on the events described above. Pinzon's complaint does not outline specific "claims" under Title VII (*e.g.*, national origin discrimination, hostile work environment, or retaliation). Given a generous reading, the court interprets Pinzon's complaint as asserting claims for (1) hostile work environment; (2) national origin discrimination; (3) pay discrimination; (4) retaliation regarding her approximately seven complaints, which resulted in

---

[3] While a plaintiff must typically file a charge of discrimination within 180 days of the alleged misconduct, in deferral states, like Virginia, plaintiffs are required to file a charge of discrimination within 300 days of the alleged misconduct. 42 U.S.C. § 2000e-5(e)(1).

unwarranted discipline and not receiving a raise; and (5) retaliation for filing a charge of discrimination, which allegedly resulted in her termination.  Pinzon requests various forms of injunctive relief, including her reinstatement, and also compensation for "past and future pecuniary losses, including expenses, lost past earnings[,] and benefits of employment."  (Compl. Prayer for Relief ¶¶ 5–6.)

On February 12, 2021, Sentara filed the instant partial motion to dismiss and an answer.  (Dkt. Nos. 5–7.)  Sentara moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) any "claims" against Sentara "related to [Pinzon's] discharge."  (Dkt. No. 5 at 1.)  Sentara argues that, because Charge 2 was untimely filed, the court must dismiss all claims relating to Pinzon's discharge.

Pinzon filed a motion for an extension of time to file her opposition in order to make a Freedom of Information Act request to the EEOC office in Tampa, Florida.  (*See* Dkt. No. 11.)  Judge Cullen granted that request and set a new briefing schedule.  (Dkt. No. 15.)  The deadlines in the Judge Cullen's order came and went, however, without Pinzon opposing the motion to dismiss or seeking another extension of time.  Pinzon's counsel then informed Judge Cullen's chambers that Pinzon would not be contesting the motion to dismiss.

Approximately two weeks later, the parties informed Judge Cullen that they could not agree on the scope of dismissal.  According to Pinzon, Sentara "presented a draft dismissal order that would bar [her] from all damages related to or subsequent to her termination."  (Dkt. No. 21 at 2.)  Pinzon disagreed with the scope of the order.  Judge Cullen entered another order requiring supplemental briefing on the parties' respective positions and reset the matter for a hearing.  Judge Cullen held a hearing on June 29, 2021.  Following transfer of the case, the

undersigned judge has reviewed the briefing and the rough transcript of the hearing. The matter is now ripe for disposition.

## II. ANALYSIS

**A. Motion to Dismiss**

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

**B. Exhaustion**

An individual alleging discrimination in violation of Title VII must file an administrative charge with the EEOC and exhaust the available administrative remedies before filing a lawsuit in federal district court. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). The Supreme Court recently held that Title VII's charge-filing requirement is a nonjurisdictional claim-processing rule. *See Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019). "A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raises'" it. *Id.* at 1849 (internal citation omitted). The EEOC charge establishes

the scope of the plaintiff's eventual civil suit. "An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000).

Pinzon takes the position that the motion to dismiss should be granted as a technicality but granting the motion should not affect her lawsuit. Pinzon argues that the discriminatory events described in her complaint—including her termination—are encompassed under Charge 1. Specifically, Pinzon argues that Charge 2's untimeliness has no effect on this lawsuit (and does not limit her available damages), as it was "unnecessarily filed and always superfluous." (*Id.* at 1.) Pinzon argues that the mention of "retaliation" in Charge 1 should not be construed as pertaining only to her treatment at work (*e.g.*, discipline, harassment by coworkers, and not getting a raise); rather, Pinzon argues that the mention of "retaliation" in Charge 1 should encompass her termination as well, which occurred approximately seven months later. Finally, Pinzon argues that if the court prohibits recovery for her termination under her "retaliation" claim, that the catch-all claim of "national origin discrimination" still encompasses her termination.[4]

---

[4] In other words, such a ruling would allow Pinzon to recover damages for her termination, but only if she can prove that she was terminated based on her national origin (as opposed to being terminated in retaliation for filing a charge of discrimination with the EEOC).

Upon conducting its own research, the court found binding Fourth Circuit caselaw that supports Pinzon's position and undercuts the position taken by Sentara. *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297 (4th Cir. 2009) (overruled on other grounds); *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992).

In *Nealon*, the plaintiff filed an EEOC charge alleging that the U.S. Army had violated her rights under the Equal Pay Act of 1963 and Title VII by paying her less than it paid a man who performed a similar job. After the EEOC made a finding of no reasonable cause, the plaintiff filed a complaint in federal court alleging Equal Pay Act and Title VII violations and alleging, for the first time, that she was retaliated against in violation of Title VII for filing the earlier EEOC charge. Noting the weight of authority, the court adopted the position that "a plaintiff may raise the retaliation claim for the first time in federal court" as the "inevitable corollary of our generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." 958 F.2d at 590. A claim of retaliation for the filing of an EEOC charge of discrimination is "like or reasonably related to and growing out of such allegations." *Id.* The court also cited "practical concerns" that a plaintiff already retaliated against for filing an EEOC charge will naturally be reluctant to file a separate charge, possibly bringing about further retaliation. *Id.*

In *Jones*, the plaintiff filed a complaint alleging discrimination based on race, sex, and age discrimination when defendant selected a white male under the age of 40 instead of her for a position for which she was qualified. Jones then filed a second discrimination charge alleging that in retaliation for filing the first charge, she was denied mentoring opportunities, management scrutinized her performance unduly, and she received a negative performance review. 551 F.3d

at 299. After determining that the rule in *Nealon* contains no pendency requirement (i.e., that the retaliatory action take place while a charge of discrimination is pending), and that *Nealon* had not been overruled, the court determined that the "critical question" is whether the retaliation claim "relates back to the charge properly before" the court, the first discrimination charge. *Id.* at 304.[5] The court concluded that it did.

> Jones's second charge alleged a pattern of conduct by her employer in retaliation for her filing the first charge that included denying her mentoring opportunities, unduly scrutinizing her performance, and giving her a negative performance review. The charge also indicated that the retaliatory behavior was ongoing . . . . Particularly in light of the indication in the second charge that Calvert's retaliatory conduct was continuing, we conclude that the alleged retaliatory termination was merely the predictable culmination of Calvert's alleged retaliatory conduct, and, accordingly, we conclude that the claim of retaliatory termination was reasonably related to the allegations of the second charge.

*Id.*

As in *Jones*, the court must determine whether plaintiff's retaliation claim relates back to Charge 1, the timely charge that is properly before the court. In Charge 1, plaintiff complains that she was blamed for uncompleted tasks and not given a raise on account of her race and in retaliation for lodging complaints about her treatment. As in *Jones*, the charge would seem to indicate that the maltreatment was ongoing. Thus, the court finds that the eventual discharge was the predictable culmination of defendant's retaliatory conduct, and the claim of retaliatory termination was reasonably related to the allegations in Charge 1.

---

[5] The second discrimination charge did not allege that the plaintiff was discriminated against because of her age, sex, or race, and, as a result, plaintiff failed to exhaust her administrative remedies with respect to those claims.

## III.  CONCLUSION

For these reasons, the court will deny Sentara's motion to dismiss.  The court will enter an appropriate order.

Entered: September 21, 2021.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge